IíowRY, J.,
delivered the opinion of the court:
This is one of a class of cases ruled adversely to the material contentions of the plaintiff in a similar case by the accounting officers of the Treasury, and deriving its importance from the rule adopted as to the status of a flag lieutenant claiming pay as an aid to a rear-admiral, as well as from the method of computing this pay if his status should be determined to be that of an aid. (Comp. Dec. Mss.)
The claim is based on that clause of section 1261 of Revised Statutes which makes the following provision:
“ The officers of the Army shall be entitled to the pay herein stated after their respective designations: * * *
“Aid to major-general: $200 a year, in addition to pay of his rank.”
This clause applies to an aid of a rear-admiral under and by virtue of section 13 of the navy personnel act of March 3, 1899 (30 Stat. L., 1007). But the question here is: Was plaintiff an aid within the meaning of the statute ?
Plaintiff’s contention is that, though he was a flag lieutenant, he was assigned to duty on the personal staff of the commander-in-chief as an aid; that the term “ aid ” is used in two senses in the Navy, one in a generic sense and meaning the officers constituting the personal staff of a flag-officer, and another in a narrower sense, that is, that the aids additional to the flag lieutenant and flag secretary are aids to a rear-admiral in the same sense as the officers on the personal-staff of a major-general within the meaning of section 1261 of the Revised Statutes. Plaintiff undertakes to fortify his contention by what he says is departmental construction and by a decision of this court affirmed on appeal by the Supreme Court. (Crosley v. United States, 38 C. Cls. R., 82; 196 U. S., 327.)
Defendants contend, on the authority of Treasury rulings, that the additional pay is allowed to “ aids ” who are designated as such, and that the extra compensation given in one case in this court was allowed only because that officer had been specifically designated as “ aid ” to a rear-admiral. It is denied that the courts have settled the question, and also denied that judicial construction can bring the claim of a *406 flag lieutenant as an aid to a rear-admiral within the letter of the regulations and statutes.
The decision of the Secretary of the Navy that officers, including flag lieutenants, are “ aids ” in every sense where assisting the commander in chief for the performance of his duties is a departmental construction not controlling, but of great weight. But the decision of the courts in Crosley's caw (supra) need only be considered to determine the contention.
It is true that in the case of Crosley that officer was specially designated as “ aid,” and that here, there was no such previous designation. But Crosley. was a flag secretary. That fact was in the record. The officer in this case was a flag lieutenant when the service, as “aid” .was rendered. ■There is no such office in military or naval life as “ aid.” If there be no such distinctive office, there could not be a separate officer for the discharge separately of these aids’ duties. The duties of an aid are performed by some officer, either by an order designating him to serve as an aid or by actually calling him in to serve as such on the staff of the commander in chief. The duty performed by this officer was a corresponding duty to the duty performed by an army aid, and we think it is too narrow a construction to say that a flag lieutenant who actually served as an aid to the commander and performed the same duty as an army aid should not be considered for purposes of pay also to be an aid and entitled to the pay. We are unable to see any distinction ■between this and the ruling of this court and the Supreme Court in the Grosley case, and we must hold that the case is ruled by that.
In computing the'amount of pay this flag lieutenant is entitled to claim as an aid it is contended by the defendants that it has not been shown whether the rear-admiral under whom the claimant served during the time covered by this claim was a rear-admiral in the 9 lower or 9 higher numbers. The findings dispose of this contention. Rear-admirals are divided into two classes for the purpose of pay, the 9 higher being paid according to corresponding rank in the Army, that of major-general, while the 9 lower receive only the pay of a brigadier-general in the Army. The rear-admiral under whom the plaintiff served as aid was at the time of the *407 service one of the 9 higher numbers of the grade of rear-admiral. (Prov. sec. 7, personnel act.) This proviso has been held, properly, we think, to be a limitation on the pay of the rear-admirals themselves, but does not affect that of their aids.
A more serious contention arises from the argument that the longevity increase of this officer be calculated upon the pay which the officer received, excluding the pay he received as an aid.
The following amendment was enacted June 30, 1882, to wit: “ That from and after the 1st day of July, 1882, the 10 per centum increase for length of service allowed to certain officers by section 1262 of the Revised Statutes shall be computed on the yearly pay of the grade fixed by sections 1261 and 1274 of the Revised Statutes.” (22 Stat. L., 118.) This statute was designed to cure a defect in the former statutes under which longevity pay was in a manner compounded. During his first five years the officer received his grade pay as fixed by section 1261 of the Revised Statutes. During his second five years he received that grade pay increased by 10 per cent thereof. During his third five years he received not only the grade pay and two 10 per cent increases thereon, but also 10 per cent increase on the first longevity increase received during the previous five years. The amendment of 1882 was evidently designed to restrict computation of the longevity increase to the grade or basic rates of pay fixed by section 1261 without also computing them upon the-previous longevity increases of which the officer was already in receipt. It would seem that the term “ yearly j>ay of the grade ” as used in this amendment was employed by Congress as synonymous with “ grade pay,” and there is great force in the contention of plaintiff that the right to longevity pay on the aids’ pay fixed by section 1261 would be taken away by the act of 1882 by the construction claimed by defendants. This would bring about a result that Congress in legislating to take away one thing which it had especially in mind inadvertently took away another- not designed to be taken away.
That aids’ pay is a proper portion of the claim seems to be in accordance with the spirit of the decisions of this court in *408 Irwin v. United States (38 C. Cls. R., 101) and United States v. Mills (197 U. S., 223) construing the term “ pay proper.” This phase of the matter is directly supported by the decision in Crosley (supra). The judgment in that case included longevity pay on the flag secretary’s pay as aid, and Mr. Justice Day concludes his opinion in that case by allowing the sums claimed in the petition and carried into the judgment except as to mounted pay. Notwithstanding this, defendants contend that the matter should be reviewed because it was a matter of inadvertence.
The contention now. made was not raised by the United States in Owsley's case either in this court or in the Supreme Court. The computation was made on Crosley’s claim just as the officer’s pay as aid was entitled to be considered. The amount of the officer’s pay as an aid was estimated as a part of his “ jia}'’ proper,” as much as the longevity increase, as long as he served as an aid. This is the liberal view. At the same time it can not be denied that the statute is susceptible of a restrictive construction that will exclude the officer from having the compensation growing out of his services as an aid taken into the account in computing the pay. And different minds might reach different conclusions about the matter if it were a question of first impression.
But it is not a matter which this court can change, since the question is settled in Owsley's case by the Supreme Court, even if we were disposed to adopt a different rule.
Judgment will be entered for plaintiff in the sum of $134.45, as prayed for in the petition.