## UNITED STATES *v.* CROSLEY.

### APPEAL FROM THE COURT OF CLAIMS.

No. 96. Submitted December 9, 1904.—Decided January 23, 1905.

While the court may not add to or take from the terms of a statute, the main purpose of construction is to give effect to the legislative intent as expressed in the act under consideration.

The Navy Personnel Act undertook to equalize the pay of naval officers with those officers of the Army of equal rank as to duties properly required of a naval officer, and it has no operation to provide pay for services peculiar to the Army.

A lieutenant in the Navy serving as aid to a rear-admiral is entitled to the additional two hundred dollars allowed to a lieutenant serving as aid to a major-general under § 1261, Rev. Stat., but he is not entitled to the mounted pay allowed to the army lieutenant serving as such aid under § 1301, Army Regulations.

THIS case was tried in the Court of Claims upon a petition filed to recover pay for services in the United States Navy, rendered by the defendant in error, while he was a lieutenant of the junior grade and acting as aid to Rear-Admiral Watson, then serving with the rank of rear-admiral in the nine higher numbers of that grade, and, under section 1466 of the Revised Statutes, entitled to rank with a major-general in the Army. The claimant alleges that he should have received from the first day of July, 1899, to the eighth day of September, 1899 —-

Pay of a first lieutenant in the Army, being the grade corresponding to lieutenant, junior grade, in the Navy, under Revised Statutes, § 1261 . . . . . . . . . . . . $1,500

Longevity pay under Revised Statutes, § 1262, for second five years of service . . . . . . . . . . . . . . . . . . . . 150

Pay as aid to rear-admiral of corresponding grade to major-general, under Revised Statutes, § 1261. . . . . 200

Mounted pay due under Army Regulations of 1895, paragraph 1301, to " authorized aids duly appointed " 100

Longevity pay upon the last two items under Revised Statutes, § 1262 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,980

That from September 9, 1899, to September 8, 1900, he was entitled to pay as follows:

Pay of a first lieutenant in the Army under Revised Statutes, § 1261 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,500

Longevity pay under Revised Statutes, § 1262, for third five years of service . . . . . . . . . . . . . . . . . . . . . 300

Pay as aid to rear-admiral of corresponding grade to major-general, under Revised Statutes, § 1261 . . . . . 200

Mounted pay due under Army Regulations of 1895, paragraph 1301 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 100

Longevity pay on the last two items under Revised Statutes, § 1262 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60

Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $2,160

He received pay during the period in controversy at the rate of $1,800 per annum, being from July 1, 1899, to September 8, 1899, the rate of pay granted by statute, Rev. Stat. § 1556, to a lieutenant, junior grade, at sea during his first five years in that rank, and for the period from September 9, 1899, to September 8, 1900, being the rate fixed by Revised Statutes, § 1261, for a first lieutenant not mounted, with the longevity allowance of the statute, § 1262, for the third five years of service, and he claims that, in addition to the amount allowed,

he is entitled to pay or allowance as aid to a rear-admiral; also, mounted pay due for such service, with the longevity pay arising from the items in question. In all, he claims the sum of $394.

The Court of Claims upon the hearing made the following findings of fact:

"The claimant entered service in the United States Navy on the 9th day of September, 1889, and from the 1st day of July, 1899, until the 8th day of September, 1900, was a lieutenant, junior grade, in the Navy, and an aid to Rear-Admiral J. C. Watson; Rear-Admiral Watson was at that time one of the nine higher numbers of the grade of rear-admiral, and was entitled under section 1466 of the Revised Statute to rank with a major-general in the United States Army. During said period claimant was paid at the rate of $1,800 a year."

And as conclusions of law held:

"Upon the foregoing findings of fact the court decides, as a conclusion of law, that the claimant recover judgment of and from the United States in the sum of three hundred and ninety-four dollars ($394)."

From the judgment of that court the United States appeals to this court.

*Mr. Assistant Attorney General Pradt* and *Mr. Special Attorney John Q. Thompson* for the United States:

It is a question of rank which determines the pay and not the character of the service which the officer performs. The position of aid to either a major-general or to a rear-admiral is not a distinct rank, within the meaning of the law. The Navy Personnel Act, very likely by oversight, leaves an aid to a rear-admiral in exactly the same position as it found him, with no provision for his compensation for his services as such aid.

He is not entitled to mounted pay by reason of acting as aid to a rear-admiral if the court should find that he is not entitled to $200 pay as aid, since the mounted pay is claimed as the pay

of an aid to a major-general. But it may be contended that
he should rank for the purpose of pay with a first lieutenant
mounted, and that therefore he is entitled to mounted pay.
The increase in pay for mounted service follows the condition
where the officer is compelled to keep a horse in order to the
proper performance of his duties. No such condition is possi-
ble in sea service in the Navy. The right to mounted pay de-
pends wholly upon the condition of mounted service, or a kind
of service that requires the officer performing the same to be
mounted, and since claimant was in a position where he could
not have performed mounted service, and where such service
was palpably inappropriate to his situation, it does not come
within the conditions which entitle him to mounted pay.

*Mr. George A. King* and *Mr. William B. King* for appellee:

Officers of the Navy are granted by the Personnel Act "the
same pay and allowances" as officers of the Army. These
words are used to describe the "entire compensation" of an
officer of the Army. *Emory* v. *United States*, 19 C. Cl. 266, and
the evident purpose is that with the exception named in the
act (forage) naval officers shall have what army officers re-
ceive. There is no reason for the discrimination attempted
to be made by the United States between pay for rank and
pay for special duty and it clearly violates this principle of
equality of pay. Section 1261, Rev. Stat., gives to the rank
of first lieutenant two different rates of pay, "mounted" and
"not mounted." These rates of pay vary under Section 1262
according to the length of service of these officers. They may
draw additional pay while serving as aids to brigadier or
major-generals. On foreign service, after May 26, 1900, they
may receive ten per cent increase of pay under the acts of
May 26, 1900, and March 2, 1901, 31 Stat. 211, 903. Section
1265, Rev. Stat., adds another rate of pay to all officers, that
is, half pay while on leave beyond thirty days a year.

First lieutenants in the Army receive pay made up of grade
pay, longevity pay, foreign duty pay, mounted pay or pay for

special duty, besides allowances. The supposed "pay for rank" cannot be the "pay and allowances" intended by the Navy Personnel Act.

As to mounted pay the defense is based upon a misunderstanding. Section 1301, Army Regulations, under which aids to major-generals draw mounted pay provides mounted pay whether the officer is or is not mounted. Section 1272, Rev. Stat., gives forage to officers only for horses actually kept by them in service, but mounted pay is granted without regard to the question whether an officer has or has not a horse in service.

Engineer officers of the Army receive mounted pay although they in time of peace are to superintend river and harbor improvements and do not require horses.

The Navy Personnel Act gives to naval officers the pay of army officers "provided by or in pursuance of law." This includes not only the pay granted by direct statute but the pay allowed under the Army Regulations, in pursuance of law.

The equality of pay between the Army and Navy as fixed by the Personnel Act is intended to be a substantial equality, which cannot exist unless under equivalent conditions in the two branches the same pay is received. Army "pay and allowances" is made up of many different items. All these items (except forage) must be paid to the naval officer, or he will not have "the same pay and allowances" as given to the army officer.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

The decision of this case turns upon the answers to two questions arising under the facts stated. First, was the claimant entitled to the extra two hundred dollars, the same as allowed an aid to a major-general in the Army? Second, was he entitled to the "mounted pay" as allowed to the major-general's aid?

The Navy Personnel Act, so called, has been so frequently before this court in recent cases as to require little general discussion of its objects and purposes. *Rodgers v. United States,* 185 U. S. 83; *White v. United States,* 191 U. S. 545; *Gibson v. United States,* 194 U. S. 182; *United States v. Thomas,* decided at this term, 195 U. S. 418.

As pointed out in the opinion in the last-named case, while the act of July 16, 1862, Revised Statutes, § 1466, had fixed the relative rank of army and naval officers, no provision for similarity of pay was made until the passage of the Navy Personnel Act, 30 Stat. 1004, which act, while providing against a reduction of then existing pay of commissioned officers of the Navy, undertook to equalize the pay of naval officers (theretofore generally below that paid to officers of corresponding rank in the Army) with that of officers in the Army of equal rank. Under the act of July 16, 1862, rear-admirals ranked with major-generals. Section 13 of the Navy Personnel Act provides:

"That after June 30, 1899, commissioned officers of the line of the Navy and of the Medical Pay Corps shall receive the same pay and allowances, except forage, as are or may be provided by or in pursuance of law for the officers of corresponding rank in the Army."

The claimant, as lieutenant of the junior grade in the Navy, corresponded in rank with a first lieutenant in the Army (Revised Statutes, § 1466), the rank of "master," named in § 1466, being subsequently changed to lieutenant, junior grade, 22 Stat. 472. By section 1098 of the Revised Statutes it is provided that each major-general shall have three aids, who may be chosen by him from the captains or lieutenants of the Army. First lieutenants, officers of the Army, under section 1261 of the Revised Statutes, are entitled to pay as follows:

"The officers of the Army shall be entitled to pay herein stated after their respective designations: . . . First lieutenant, mounted: sixteen hundred dollars a year; first lieuten-

ant, not mounted: fifteen hundred dollars a year; . . . aid to major-general: two hundred dollars a year, in addition to the pay of his rank."

For each five years of service it is provided in section 1262:

"There shall be allowed and paid to each commissioned officer below the rank of brigadier-general, including chaplains and others having assimilated rank or pay, ten per centum of their current yearly pay for each term of five years service."

The contention of the Government is that, while the pay of naval officers is made to correspond with that of army officers of like rank, the naval officer assigned to duty as aid may not receive the $200 additional pay, as it is not pay on account of rank, but on account of service. But we think this is too narrow a construction of the terms of the act, in view of its intent and purpose. For while we may not add to or take from the terms of a statute, the main purpose of construction is to give effect to the legislative intent as expressed in the act under consideration. An aid to a rear-admiral renders services similar to those rendered by an aid to a major-general in the Army. The naval aids are appointed under paragraphs 343 and 345 of the Naval Regulations of 1895, which are:

"SEC. 343. The chief of staff, flag lieutenant, clerk and aids shall constitute the personal staff of a flag officer."

"SEC. 345. (1) A flag officer may select any officer of his command to serve as flag lieutenant or clerk, provided his grade accords with the rules laid down in Article 344. (2) He may also, when necessary, select other line officers junior to the flag lieutenant to serve on his personal staff as aids, but shall not assign naval cadets to such duty."

They are selected for like service, and it is admitted that there would have been reason for a like express statutory provision in their favor as to compensation. The sum of $200 is allowed to an aid to a major-general in addition to the regular pay of his rank. It is allowed as payment for the additional service imposed. Bearing in mind the purpose of the act to give the same compensation to corresponding officers of the

Army and Navy, and that it is expressly provided that officers of the Navy shall receive the same pay and allowances, except for forage, as are or may be provided by law for officers of the Army of corresponding rank, we think it does no violence to, but rather carries out, the purpose of Congress to construe this section so as to give to an aid of a rear-admiral, in addition to the regular pay of his rank, pay similar to that allowed an aid to a major-general. We reach the conclusion that the Court of Claims was right in its allowance of this item.

The solution of the question as to mounted pay depends upon whether such pay is given to an officer whose duty requires him to be subject to mounted duty, or whether it is a term used to designate the pay of aids whether they are required to render mounted service or not. Section 1301 of the Army Regulations of 1895 provides:

"The following officers, in addition to those whose pay is fixed by law, are entitled to pay as mounted officers: Officers of the staff corps below the rank of major, officers serving with troops of cavalry, officers of a light battery duly organized and equipped, authorized aids duly appointed, officers serving with companies of mounted infantry, and officers on duty which, in the opinion of the department commander, requires them to be mounted and so certified by the latter on their pay vouchers."

The contention of the appellee is that aids, duly appointed under this section, serving in the Army, are entitled to this compensation, whether required to be mounted or not. And further, that the language "pay as mounted officers" is used in the paragraph rather with a view of fixing the amount to be paid than to characterize the service required. It is doubtless true that the terms mounted pay may be used in this sense. *Richardson* v. *United States*, 38 C. Cl. 182, is cited as an illustration of this use of the phrase. In that case it was held that an assistant surgeon in the Navy was entitled to mounted pay under the Navy Personnel Act, because an assistant surgeon in the Army was entitled thereto. Under section 1168 of the Revised Statutes, an assistant surgeon in the Army ranked

with a lieutenant of cavalry for the first three years of service, and with a captain of cavalry after the expiration of that period. Under these provisions the assistant surgeon was held entitled to mounted pay.

We are further cited to a decision of the Comptroller of the Treasury, 10 Comp. Dec. 523, holding that officers of the Pay Corps of the Navy are entitled to mounted pay, as officers of the Pay Corps of the Army are given by law cavalry or mounted pay. It may well be that in these cases mounted pay was descriptive of the compensation to be paid, and an officer may therefore be entitled to it, although he renders no mounted service.

But the right of mounted pay to an aid to a rear-admiral, assuming that the Navy Personnel Act assimilates the compensation of an admiral's aid to that of an aid to a major-general in the Army, depends upon whether an aid to a major-general under section 1301 of the Army Regulations above quoted, although he renders no mounted service, and may not be required to be mounted, is entitled to such compensation. We think sections 1302 and 1303 of the Army Regulations may also be noticed in this connection. They are:

"SEC. 1302. Department commanders will announce, in orders, the authority obtained from the Secretary of War for mounting companies of infantry, giving the date from which such mounted service commences, and termination of the same.

"SEC. 1303. Muster rolls and returns of light batteries and companies of mounted infantry will show the number, date and source of order authorizing mounted service. The pay accounts of officers charging mounted pay will contain the same information. A copy of the order will be attached to the first muster rolls prepared after the battery or company has been equipped or mounted; a copy of the order discontinuing such service will appear on the first muster rolls prepared after its discontinuance."

We think these sections, with § 1301 of the Army Regulations above quoted, read in the light of the statute (Rev. Stat.

§ 1270) giving to army .officers the pay of cavalry officers of the same grade when assigned to duty which requires them to be mounted, indicate a general purpose to give to officers of the Army mounted pay when their duties are such as may require them to be actually mounted, or are such as may at any time subject them to the necessity of rendering mounted service. The particular section (1301) under which it is insisted that a naval aid is entitled to mounted pay, designates officers who either are or may be required to be mounted in the discharge of their duties, and likewise to "officers on duty which, in the opinion of the department commander, requires them to be mounted and so certified by the latter on their pay vouchers."

This paragraph was intended to include the particular classes of officers who are entitled to pay as mounted officers under the classification in the first part thereof, and gives the benefit of the higher rate of compensation to other officers, not expressly named therein, whose duties require them to be mounted. It may be true, as argued at the bar, that there may be times when the duties of an aid to a major-general will not require him to be mounted. But, as we understand the Army Regulations, such officers may be at any time required to render mounted service, and are therefore given the pay of that class. Obviously, the duties of an aid to a rear-admiral are not such as to require him to render mounted service, and as the Navy Personnel Act only undertakes to afford a measure of compensation for duties which can properly be required of a naval officer, it can have no operation to provide pay for services peculiar to the Army. As was held in *United States* v. *Thomas, supra,* it does not follow, because Congress gives special pay to army officers, that the same right of compensation applies to naval officers also. In that case it was held that an allowance to army officers who might be ordered to sea or a foreign port could not be given to naval officers whose regular duties require them to engage in service upon the sea and to cruise upon foreign waters and serve in foreign ports.

The present case affords still less reason for giving the pay of an army officer to one in the Navy, where the compensation is given for a character of service which never can be required except in the Army.

Upon this branch of the case we think the Court of Claims was in error, and the judgment for mounted pay should not. have been rendered in favor of the claimant.

The judgment of the Court of Claims is modified, disallowing the sums claimed in the petition and carried into the judgment on account of mounted pay and longevity pay based thereon, and, as modified, is

*Affirmed.*